[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13968
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 18, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:07-cv-00666-JES-DNF

EHLEN FLOOR COVERING, INC.,
a Florida corporation,
EDWARD EHLEN,
an individual,
THOMAS EHLEN,
an individual,
FRANCIS EHLEN,
an individual,
EHLEN FLOOR COVERINGS RETIREMENT PLAN,

Plaintiffs - Counter Defendants
Appellees,

DOLORES EHLEN,

Plaintiff - Counter Defendant,

versus

JEFFREY LAMB,
individually, et al.,

Defendants,

INNOVATIVE PENSION STRATEGIES, INC.,
a California corporation,

Defendant - Counter Claimant
Appellant.

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 18, 2011)

Before MARCUS, WILSON and HILL, Circuit Judges.

WILSON, Circuit Judge:

Innovative Pension Strategies, Inc. ("IPS") appeals the district court's denial

of its motion to compel arbitration and stay plaintiffs' claims against it. Plaintiffs

cross-appeal, disputing the preemption of their claims under the Employment

Retirement Income Security Act ("ERISA") and alleging a lack of federal

jurisdiction. We find that jurisdiction is proper and affirm the district court's

denial of IPS's motion to compel arbitration.

## I. BACKGROUND

Thomas, Francis, Edward, and Dolores Ehlen[1] ("the Ehlens") are employees

of Ehlen Floor Covering, Inc. ("Ehlen Floor"). In 2002, Ehlen Floor created a

412(I) employee benefit pension plan, the Ehlen Floor Coverings Retirement Plan

("the Plan"), with the help of advisors and administrators. IPS, a corporation

_____

[1] Dolores Ehlen was dismissed without prejudice as a plaintiff on March 15, 2010.

2

specializing in pension plan design and administration for small businesses, took over as the Plan administrator at the start of 2003. As part of the commencement of IPS's services, Edward Ehlen, in his capacity as president of Ehlen Floor, signed an Arbitration Addendum ("AA") attached to an Administrative Services Agreement ("the Agreement") between IPS and Ehlen Floor. The AA called for arbitration of "any claim arising out of the rendition or lack of rendition of services under [the] [A]greement." The Agreement provided a list of available services that IPS could provide, such as performing annual reviews of the Plan, making amendments, and preparing annual report forms. The Agreement also stated that Ehlen Floor would indicate in Section VI of the Agreement which of the available services it desired for IPS to actually perform. There is no Section VI in the Agreement, nor is there any testimony or evidence that plaintiffs ever viewed a Section VI of the Agreement.

Shortly after IPS stepped in as administrator of the Plan, it became aware that the Plan was not in compliance with several Internal Revenue Service ("IRS") rules and regulations. IPS contends that it drafted an amendment to correct these flaws, but the amendment was never officially adopted. In 2004, the IRS promulgated new rules explaining that it would consider 412(i) plans with

3

beneficiary payout limitations to be listed transactions[2], possibly subject to serious penalties. The rule required any plans that could be considered listed transactions to file Form 8886 to avoid potential penalties. IPS drafted another amendment to the Plan after determining that the Plan would likely be classified as a listed transaction under the new rules. Ehlen Floor was not informed about the pre-rule tax problems, the existence of the new rule, the additional filing requirements that the new rule imposed, or the drafting of the new amendment. The IRS instigated an audit on March 6, 2006, found the Plan to be non-compliant, and ultimately assessed significant penalties against Ehlen Floor.

In August 2007, plaintiffs filed a complaint in state court against a number of parties involved with the creation and initial administration of the Plan, asserting claims of negligence, fraudulent and negligent misrepresentation, negligent supervision, breaches of fiduciary duties, and unfair and deceptive trade practices. The case was removed to federal court on the basis of preemption under ERISA. In May 2009, as requested by the court, plaintiffs recast their complaints as federal matters in their Second Amended Complaint, but plaintiffs contested the

---

[2] A listed transaction is a transaction that is the same as, or substantially similar to, one that the IRS has determined to be a tax avoidance transaction. The IRS identifies types of listed transactions and usually promulgates additional reporting requirements for persons engaged in such transactions.

removal and argued against federal jurisdiction. IPS was added as a defendant in the Second Amended Complaint. IPS then moved to compel arbitration of the dispute, claiming that the terms of the AA govern the matter. The district court denied the motion. IPS appeals; plaintiffs cross-appeal to challenge the existence of federal jurisdiction.

## II. STANDARD OF REVIEW

We review questions of jurisdiction *de novo*. *See McKusick v. City of Melbourne*, 96 F.3d 478, 482 (11th Cir. 1996). The denial of a motion to compel arbitration is reviewed *de novo*. *See Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1056–57 (11th Cir. 1998).

## III. DISCUSSION

*A. Complete preemption under ERISA grants federal jurisdiction*

Questions of jurisdiction can be raised at any point in the litigation, *see Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 778 n.3 (11th Cir. 2002), and must be addressed first to ensure that we have the authority to hear the case. The existence of federal jurisdiction is tested as of the time of removal. *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1294–95 (11th Cir. 2008). Jurisdiction is determined by looking to the face of the plaintiffs' well-pleaded

complaint, so we examine the plaintiffs' original complaints entered at the time of removal. *See Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).

A federal district court has original jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. Federal question jurisdiction generally exists only when the plaintiffs' well-pleaded complaint presents issues of federal law, but the complete preemption doctrine of ERISA creates an exception to that rule. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Regardless of its characterization as a state law matter, a claim will be re-characterized as federal in nature if it seeks relief under ERISA. *Kemp*, 109 F.3d at 712.

This court acknowledged in *Conn. State Dental* that the test articulated by the Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S. Ct. 2488, 2496 (2004), should govern our inquiry into whether complete preemption under ERISA exists. 591 F.3d at 1345. The *Davila* test asks (1) whether the plaintiffs could have ever brought their claim under ERISA § 502(a) and (2) whether no other legal duty supports the plaintiffs' claim. *Id.*

Step one of *Davila* entails two inquiries: first, whether the plaintiffs' claims fall within the scope of ERISA § 502(a), and second, whether ERISA grants the plaintiffs standing to bring suit. *Conn. State Dental*, 591 F.3d at 1350. ERISA §

502(a)(2) allows a civil action to be brought by "a participant, beneficiary[,] or fiduciary for appropriate relief under [29 U.S.C. § 1109]." 29 U.S.C. § 1132(a)(2). Section 1109 allows recovery against, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter." 29 U.S.C. § 1109(a). Fiduciary duties imposed by ERISA include "proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–3, 105 S. Ct. 3085, 3090 (1985).

Plaintiffs argue that their claims against IPS concern the design and repair of the Plan, not IPS's ERISA-regulated duties such as management and administration of the Plan. It is true that some of plaintiffs' assertions do not fall under the umbrella of ERISA, but their allegations of breach of fiduciary duties and failure to make required disclosures are clearly potential claims under 29 U.S.C. § 1109(a), thus fulfilling prong one. The second inquiry is satisfied because Ehlen Floor and the Ehlens have standing under ERISA § 502(a)(2) as fiduciary and Plan participants, respectively.

Step two of *Davila* looks to whether the plaintiffs' claims implicate a duty independent of ERISA. In *Davila*, the Supreme Court found that although

7

respondents' claim asserted a breach of duty under the Texas Health Care Liability Act (THCLA), the "interpretation of the terms" of the benefit plan "form[ed] an essential part of their THCLA claim," such that there was no independent claim to defeat preemption. 542 U.S. at 213, 124 S. Ct. at 2498. Similarly, in *Borrero v. United HealthCare of N.Y., Inc.*, appellants argued that their contractual duties were defined by state law, but this court found that even though the appellants' assertion was "true in the abstract," "the content of the claims necessarily require[d] the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans." 610 F.3d 1296, 1304 (11th Cir. 2010). This court held that if some of a party's claims "implicate legal duties dependent on the interpretation of an ERISA plan," the claims are completely preempted. *Id.* at 1304–5.

Plaintiffs here assert that IPS failed to disclose information related to the Plan— an ERISA violation— and abrogated its fiduciary obligations, which arise from the relationship established by the Plan and IPS's duties under ERISA. Like the claims in *Borrero*, the "legal duty implicated is dependent upon an ERISA plan." *Id.* at 1304. Because there is federal question jurisdiction over these claims, supplemental jurisdiction provides us with subject matter jurisdiction over the remaining claims. *See id.* at 1304–05.

*B. The Arbitration Agreement does not govern this dispute*

Plaintiffs and IPS agree on the following: Ehlen Floor signed the AA attached to the Administrative Services Agreement; the AA requires arbitration of disputes arising out of the provision of services under the Agreement; the Agreement lists available services that IPS is capable of providing; the Agreement states that the "particular services to be performed are indicated in Section VI, 'Election of Services,'" within the Agreement; and Section VI does not exist. IPS argues that the AA should still govern Ehlen Floor's claims and that the Ehlens, non-signatories to the AA, should be equitably estopped from avoiding arbitration. We disagree.

Although there is a liberal federal policy favoring arbitration agreements, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983), this policy does not override the wishes of parties who have restricted the circumstances under which they agree to arbitrate disputes, *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S. Ct. 1212, 1216 (1995). Here, Ehlen Floor and IPS intentionally limited the scope of arbitrable matters by specifying that not all disputes would be sent to arbitration, only those directly linked to the provision of services under the contract. As we examine their contract to determine what those services are, the absence of the

9

mysterious Section VI creates a problem. We see a laundry list of available services but, ultimately, no selection of services to be provided. It is impossible for us to say that a dispute "arose out of services under the Agreement" when the Agreement does not stipulate any services.

IPS argues that an arbitrator should decide whether the AA applies, but this ignores the parties' intent to have a threshold limitation on the types of claims that will be sent to arbitration. Furthermore, even if we accepted IPS's argument that all disputes arising from available services, rather than selected services, should be arbitrated, it is not clear that plaintiffs' claims concern the available services. IPS relies heavily on Agreement language that one service offered was to draft amendments "[a]s requested by [Ehlen Floor], or required by minor changes in tax law, or as needed to conform to testing of discrimination requirements." The change in tax law in this case was hardly minor, and the amendment was not disclosed to plaintiffs, much less requested.

IPS also asserts that principles of equitable estoppel bar the claims of the Ehlens, non-signatories to the AA. IPS contends that the Ehlens cannot assert claims arising dependent upon the Agreement while escaping other clauses of the Agreement. The Ehlens do not seek to enforce the Agreement, though, and as we

10

explained above, the claims cannot be said to arise from services under the Agreement because the document specified no services.

We therefore affirm the district court's denial of IPS's motion to compel arbitration and to stay plaintiffs' claims against it.

**AFFIRMED.**