# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2009

Charles R. Fulbruge III
Clerk

No. 08-50646

LONE STAR OB/GYN ASSOCIATES

Plaintiff-Appellee

v.

AETNA HEALTH INC

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Lone Star OB/GYN Associates ("Lone Star") brought this action in Texas state court under Texas law, alleging that health insurance provider Aetna Health Inc. ("Aetna") failed to pay the proper amount for services provided to patients treated by Lone Star. Aetna removed the case to federal court, arguing that Lone Star's state law claims were completely preempted by the Employee Retirement Income Security Act (ERISA). Lone Star successfully moved in district court to amend its complaint and remand the case back to state court. For the following reasons, we vacate and remand.

I

Lone Star is a health care provider that entered into a contract (hereinafter "Provider Agreement") with Aetna Health, an administrator of "employee welfare benefit plans" regulated by ERISA. *See* 29 U.S.C. § 1002(1). Among the benefit plans administered by Aetna are health insurance plans for The Boeing Company ("Boeing Plan"), Hyatt Corporation ("Hyatt Plan") and UPS ("UPS Plan"). By entering into the Provider Agreement with Aetna, Lone Star became a "Participating Provider" for individuals enrolled in Aetna-administered insurance plans ("Plan Members"), entitling Lone Star to inclusion in physician directories that Aetna sends to its members.

Lone Star sued Aetna in Texas court under the Texas Prompt Pay Act ("TPPA"). Lone Star alleged that Aetna had not paid Lone Star's payment claims[1] at the rates set out in the Provider Agreement and within the time period required by the TPPA. Attached to Lone Star's complaint was a list of disputed payment claims.

Aetna removed the case to federal court on the basis that Lone Star's state law claims were completely preempted by ERISA. In district court, Lone Star filed a motion to remand to state court. Aetna pointed to payment claims that it argued were preempted by ERISA because coverage was denied. Lone Star sought leave to amend its pleadings so as to remove certain claims. The new list of payment claims redacted those payment claims for which Aetna submitted no payment because coverage was denied. All payment claims that Aetna had

---

[1] For clarity, claims for payment submitted to Aetna by Lone Star are referred to as "payment claims" while state law claims made under the TPPA are referred to as simply "claims."

partially paid remained. The district court granted Lone Star's motions for leave to amend and remanded the amended claims. Aetna timely appealed.[2]

## II

The party seeking removal bears the burden of showing that federal jurisdiction is proper. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). Once the case is removed, a plaintiff's voluntary amendment to a complaint will not necessarily defeat federal jurisdiction; it is within the district court's discretion whether to remand the action to state court. *Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 998 (5th Cir. 1988). However, the district court may not remand if the defendant demonstrates the presence of a "substantial federal claim, *e.g.*, one completely preempted by ERISA[.]" *Giles v. NylCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). We review the question of whether a claim is preempted under ERISA *de novo*. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 269 (2004).

## III

In enacting ERISA, Congress created a comprehensive civil-enforcement scheme for employee welfare benefit plans that completely preempts any state-law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into " 'one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). In other words, even if the plaintiff did

---

[2] As an initial matter, we address our jurisdiction over the appeal. After oral argument was heard in this case, the Supreme Court issued its decision in *Carlsbad Tech., Inc. v. HIF Bio., Inc.,* 129 S. Ct. 1862 (2009), establishing that district court orders declining to exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 and remanding those claims to state court are appealable under 28 U.S.C. § 1447. Thus, this Court's opinion in *Giles v. NylCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) remains good law, and we maintain jurisdiction over the appeal from the district court's order.

not plead a federal cause of action on the face of the complaint, the claim is " 'necessarily federal in character' " if it implicates ERISA's civil enforcement scheme. *Giles*, 172 F.3d at 336-37 (quoting *Taylor*, 481 U.S. at 64-65).

ERISA's civil enforcement scheme is laid out in § 502(a) of the ERISA statute. Section 502(a)(1)(B) establishes that a civil action may be brought by a participant or beneficiary: "[T]o recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Therefore, if a party's state law claims fall under this § 502(a)(1)(B) definition, they are preempted by ERISA.

Aetna argues that Lone Star's state law claims seek to recover benefits due to Lone Star under the terms of their patients' Member Plans and are thus preempted by ERISA. Lone Star, however, argues that their state law claims arise solely from the Provider Agreement, as Aetna failed to pay the correct contractual rate for services rendered to patients who were Members of Aetna Plans.[3] There are thus two issues we must resolve: (1) whether state law claims that arise out of a contract between medical providers and an ERISA plan are preempted by ERISA; and (2) whether Lone Star's state law claims in fact implicate only rate of payment issues under the Provider Agreement, or if they actually involve benefit determinations under the relevant plan.

---

[3] Lone Star clearly has standing to seek benefits under the terms of their patients' ERISA plans, as Lone Star's patients have assigned Lone Star their rights under those plans. The crucial question is whether Lone Star is in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract. A healthcare provider suing on the basis of assignment of ERISA rights, benefits or claims from a plan member must proceed under the procedures established by § 502(a), as the provider is seeking to enforce the terms of the plan. *See, e.g.*, *Quality Infusion Care Inc. v. Humana Health Plan of Tex., Inc.*, 290 F. App'x. 671, 679 (5th Cir. Aug. 13, 2008) (unpublished). But where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing.

A

In order to determine whether Lone Star's claims fall within the scope of § 502(a), we must look at the relationship between the Provider Agreement and the ERISA plans. In *Davila*, the Supreme Court held that:

> [I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other **independent legal duty** that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, 542 U.S. at 210 (emphasis added). The ERISA preemption question thus turns on whether the Provider Agreement creates a legal duty "independent" of the ERISA plan—in this case, a duty to pay a specific contractual rate for services rendered under the ERISA plan.

It is clear that the Provider Agreement and the ERISA plans cross-reference each other.[4] The Provider Agreement establishes that Aetna will pay Lone Star and Lone Star physicians' claims for "Covered Services," where "Covered Services" are those services recognized as "medically necessary" under the terms of the relevant ERISA plan. The ERISA plans state that Aetna will pay "Recognized Charges," and, under the definition of "Recognized Charges," state that where Aetna has an agreement with a health care provider, the "Recognized Charge" is the rate established in that agreement. The Provider Agreement also establishes the rates of payment receivable from Aetna for treating Plan Members. Under the Provider Agreement, Lone Star is to be paid the lesser of: (i) its usual, customary, and reasonable billed charges; (ii) the rates set forth in the Compensation Schedule; or (iii) the fee schedule in the Member's Plan.

---

[4] In describing the terms of the ERISA plans, we use the provisions of the Hyatt Plan as an illustrative example. All references to "the ERISA plan" are therefore to the Hyatt Plan.

However, determination of the rate that Aetna owes Lone Star under the Provider Agreement does not require any kind of benefit determination under the ERISA plan. The fee schedules in the Member Plans in this case all refer back to the Provider Agreement. The Provider Agreement sets out the Compensation Schedule, which establishes the rate of payment as a fixed percentage of the "Aetna Market Fee Schedule," a standard schedule used by Aetna that is updated annually and based on the location where the service is performed. The Aetna Market Fee Schedule relies on codes used by doctors known as "CPT Codes," which identify the medical procedure performed by the doctor. Each CPT Code has a different rate of reimbursement under the Aetna Market Fee Schedule. Thus, in calculating what it owes Lone Star, Aetna determines the reimbursement rate under the Aetna Market Fee Schedule for each CPT Code submitted by the doctor, and pays Lone Star the fixed percentage (set out in the Provider Agreement) of that amount.

Lone Star concedes that in calculating the correct contractual rate, the amounts of the Plan Member's Copayment/Coinsurance/Deductible will have to be accounted for, and those amounts are set out in the ERISA plan, not the Provider Agreement. However, Lone Star argues that mere consultation of an ERISA plan is not enough to bring the claims within the scope of § 502(a).

We agree. A claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA. *See Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999). Though the plan and the Provider Agreement cross-reference each other, the terms of the plan—in particular, those related to coverage—are not at issue in a dispute over whether Aetna paid the correct rate for covered services as set out in the Provider Agreement. While Aetna is correct that any determination of benefits under the terms of a plan—i.e., what is "medically

necessary" or a "Covered Service"—does fall within ERISA, Lone Star's claims are entirely separate from coverage and arise out of the independent legal duty contained in the contract and the TPPA.

In so holding, we adopt the reasoning of the Third and Ninth Circuits, and that of a majority of district courts in this Circuit[5] which have relied on this distinction between "rate of payment" and "right of payment." *See Anesthesia Care,*187 F.3d at 1051; *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 403-04 (3d Cir. 2004). *Anesthesia Care* dealt with essentially identical facts to this case: a group of medical providers participating in an ERISA-regulated medical care plan offered by Blue Cross sued Blue Cross over changes to fee schedules that were specified in an agreement between Blue Cross and the providers. *See Anesthesia Care*, 187 F.3d

---

[5] A majority of the district courts in this Circuit have held no ERISA preemption of state law claims where there is an underlying contract between the provider and the insurance company and the claims are not dependent on interpretation of the plan. *See Touro Infirmary v. Am. Mar. Officer*, Civil Action No. 07-1441, 2007 WL 4181506 (E.D. La. Nov. 21, 2007) (finding no preemption because assignment did not give plaintiff standing to sue under § 502(a)); *Ne. Hosp. Auth. v. Aetna Health Inc.*, Civil Action No. H-07-2511, 2007 WL 3036835 (S.D. Tex. Oct. 17, 2007) (where suit was based on separate contract there is no preemption); *Mem'l Hermann Hosp. Sys. v. Aetna Health Inc.*, No. 4:06-CV-0828, 2007 WL 1701901 (S.D. Tex. June 11, 2007) (holding no preemption because although plaintiff could have sued under assignment it chose not to and had rights independent of the plan); *Crossroads of Tex., LLC v. Great-West Life & Annuity Ins. Co.*, 467 F. Supp. 2d 705 (S.D. Tex. 2006) (suit for underpayment based on the end of contract was not preempted); *Halliburton Co. Benefits Comm. v. Mem'l Hermann Hosp. Sys.*, No. Civ.A. H-04-1848, 2006 WL 148901 (S.D. Tex. Jan. 19, 2006) (in a declaratory action, because provider intended to forgo its claims arising under ERISA, and only intended to pursue state law claims there was no federal issue); *Mem'l Herman Hosp. Sys. v. Great-West Life & Annuity Ins. Co.*, No. Civ.A. H-05-1234, 2005 U.S. Dist. LEXIS 40585 (S.D. Tex. June 30, 2005) (holding no preemption because although plaintiff could have sued under assignment it chose not to and had rights independent of the plan); *Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.*, No. Civ.A. 04-1632, 2005 WL 1038072 (E.D. La. Apr. 27, 2005) (suit brought under contract was not preempted because provider was not suing on basis of assignment). *But see St. Luke's Episcopal Hosp. v. Acordia Nat'l*, Civil Action No. H-05-1438, 2006 WL 3093132 (S.D. Tex. June 8, 2006) (notwithstanding contract between hospital and insurance, dispute was over patients' right to coverage and was thus dependent on plan terms); *Radiology Assocs. of San Antonio, P.A. v. Aetna Health, Inc.*, No. CIVASA03CA1152RF(NN), 2005 U.S. Dist. LEXIS 3749 (W.D. Tex. Mar. 2, 2005) (breach of contract claim preempted because contract was intertwined with ERISA plan).

at 1048. The Ninth Circuit found that the cause of action arose out of the provider agreement and thus did not fall under ERISA § 502(a), rejecting Blue Cross's argument that a reference in the provider agreements to "Physician's covered billed charges" depended on interpretation of the terms of the plan. *See id.* at 1051-52.

*Anesthesia Care* was decided before *Davila*, and Aetna argues that the result is incorrect under *Davila*. We disagree.[6] In *Davila*, plaintiffs brought suit under the Texas Health Care Liability Act ("THCLA"), alleging that the administrators of their ERISA-regulated benefit plans had violated the independent legal duty of "ordinary care" in denying coverage under the terms of the plan. The Supreme Court held that, because "the failure of the plan itself to cover the requested treatment would be the proximate cause" of the plaintiffs' injuries, and because "interpretation of the terms of [plaintiffs'] benefit plans forms an essential part of their THCLA claim,"the claim was preempted by ERISA. *Davila*, 542 U.S. at 213. *Davila* was thus concerned with the situation where "potential liability . . . derives entirely from the particular rights and obligations established by the benefit plans," i.e., coverage and benefit determinations. *Id.* Where, however, a medical service is determined to be covered and the only remaining issue is the proper contractual rate of payment, coverage and benefit determinations are not implicated and the claims are not preempted.

*Davila* also does not support the proposition that mere reference to or consultation of an ERISA plan in order to determine a rate of pay is sufficient

---

[6] We are not the only post-*Davila* Circuit court to have adopted the distinction between the "rate of payment" and the "right of payment." The Third Circuit, in a post-*Davila* case, applied the *Anesthesia Care* reasoning to find no ERISA preemption of claims where (1) the claims arose from the terms of a contract allegedly independent of the plan; (2) the participants and beneficiaries of the plan were not parties to the contract; and (3) the dispute was over the "amount" of payment rather than the "right" to payment. *Pascack Valley Hosp.*, 388 F.3d at 403-04.

for preemption. In *Davila*, the Supreme Court re-affirmed that the preemptive force of § 502(a)(1)(B) mirrored that of § 301 of the Labor Management Relations Act ("LMRA"). *Id.* at 209. LMRA cases establish that the need to refer to a collective bargaining agreement to determine, for example, the rate of pay, does not bring claims within the scope of § 301. *See Livadas v. Bradshaw*, 512 U.S. 107, 123-25 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *see also Anesthesia Care*, 187 F.3d at 1051 (*citing Livadas*, 512 U.S. at 123-25). We find that the same reasoning applies in the context of ERISA § 501(a)(1)(B).

Finally, in seeking remedies under the Texas Pay Prompt Act, Lone Star is not seeking relief that "duplicates, supplements or supplants" that provided by ERISA. *Davila*, 542 U.S. at 209. The TPPA allows a physician or provider to collect the contracted rate plus penalties for "payable" claims that are not paid within a statutorily specified amount of time. A TPPA remedy only overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is "payable"—whether there has been a denial of benefits because there is a lack of coverage. Again, where claims do not involve coverage determinations, but have already been deemed "payable," and the only remaining issue is whether they were paid at the proper contractual rate, ERISA preemption does not apply.

B

The remaining issue is how Lone Star's payment claims are properly characterized. With its motion to remand, Lone Star originally submitted a list that contained payment claims that were partially paid as well as payment claims for which Aetna denied all payment. Aetna pointed out to the district court that fully denied claims were preempted under ERISA because they resulted from Aetna's determination that the particular medical services were

not covered under the applicable plan. Lone Star resubmitted a list of payment claims with all fully denied payment claims redacted. The payment claims at the heart of the current dispute are thus those that were partially paid by Aetna. Aetna argues that the claims are partially paid because they resulted from a partial denial of benefits due to Aetna's determination that a given service was not "medically necessary" under the terms of the ERISA plan.[7] Thus, Aetna contends that because even partial denials of benefits depend on interpretation of the plan, the partially paid claims are preempted. Lone Star argues that the payment claims were for services that Aetna determined *were* covered by the plan, but for which Aetna paid the wrong contractual rate, for example through mistakenly referring to the wrong rate in Aetna Market Fee Schedule.

We hold that claims for underpayment under the Provider Agreement, which do not implicate coverage determinations under the terms of the relevant plan, are not preempted under ERISA. *See supra* Part III.A. However, on the basis of the record before us, we cannot answer the factual question of whether the disputed payment claims were partially paid because Aetna denied the service for lack of coverage under the plan, or because Aetna misinterpreted the Provider Agreement or made a mistake in referring to the proper fee schedule. If each individual payment claim submitted by a doctor in fact corresponds to a single medical procedure, there may be credence to Lone Star's contention that a partial payment by Aetna indicates an error in calculating the contractual rate rather than a coverage determination under the plan, since a procedure is either covered or not covered under the plan. If, however, any individual payment

---

[7] Aetna argues that the payment claims resulted from "adverse benefit determinations" under the relevant plan. Under the plan, an "adverse benefit determination" means a "denial, reduction, or termination of a benefit, including a failure to pay all or part of a benefit claim, whether based on a determination that the Claimant is ineligible to participate in the Plan or based on a utilization review. The term also includes failure by the Plan to cover an item or service for which benefits are otherwise provided because it is found to be Experimental or Investigational, or because it is found not to be Medically Necessary or appropriate."

claim potentially encapsulates multiple procedures only some of which were covered, and partial payment thus resulted from a denial of benefits under the plan, the claim may be preempted. We leave it to the district court to determine whether any of the payment claims submitted by Lone Star implicate a coverage determination under the plan and thus a federal issue under ERISA. We therefore VACATE the district court's order and REMAND to the district court for further proceedings not inconsistent with this opinion.