GABLES INSURANCE RECOVERY a/a/o Acupuncture & Health Promotion, Inc., Plaintiff,

v.

UNITED HEALTHCARE INSURANCE COMPANY, Defendant.

Case No. 13–21157–CIV.

United States District Court, S.D. Florida.

Signed Aug. 8, 2013.

Robert Nelson Pelier, Coral Gables, FL, Thomas Richard Poole, Gables Insurance Recovery, Inc., Miami, FL, for Plaintiff.

Shari Lyn Gerson, Ft. Lauderdale, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, District Judge.

THIS CAUSE is before the Court upon several Notices of Filing Supplemental Authority (collectively, the "Notices") [ECF Nos. 18, 20, 26, 27], filed by Plaintiff, Gables Insurance Recovery ("GIR"). The Notices provide copies of four orders [1] granting motions to remand in similar cases by other judges in this District.[2] The Court ordered Defendant, United Healthcare Insurance Company ("United") to file a memorandum explaining why the undersigned should not adopt the reasoning presented in the Judge King Remand Order [3]

---

1. The four orders (collectively, "Remand Orders") are submitted as attachments to the Notices. (See [ECF Nos. 18–1, 20–1, 26–1, 27–1]).

2. The four Remand Orders are: (1) Order Granting Motion to Remand, *Gables Ins. Recovery Inc. v. United Healthcare Ins. Co.,* No. 13–21137–CIV–KING (S.D.Fla. May 21, 2013), [ECF No. 19] (the "Judge King Remand Order"); (2) Order, *Gables Ins. Recovery v. UnitedHeathcare Ins. Co.,* No. 13–21142–CV–GRAHAM/GOODMAN (S.D.Fla. May 28, 2013), [ECF No. 23] (the "Judge Graham Remand Order"); (3) Order Granting Plaintiff's Motion to Remand, *Gables Ins.*

*Recovery Inc. v. Aetna Life Ins. Co.,* No. 13–CV–21133–KMM (S.D. Fla. June 13, 2013), [ECF No. 30] (the "First Judge Moore Remand Order"); and (4) Order of Remand, *Gables Ins. Recovery Inc. v. Aetna Life Ins. Co.,* No. 13–CV21134–KMM (S.D. Fla. June 24, 2013), [ECF No. 12] (the "Second Judge Moore Remand Order").

3. Although the May 23 Order only required United to distinguish the Judge King Remand Order, GIR filed the Judge Graham Remand Order, and United responded, explaining why the Court should not adopt either remand order. Subsequently, GIR filed the First Judge Moore Remand Order and the Second

and similarly remand this action. (*See* Order dated May 23, 2013 ("May 23 Order") [ECF No. 19] ). United filed a Memorandum of Law in Response to Plaintiff's Notice[s] ... ("Response") [ECF No. 21] on June 5, 2013. GIR filed an Amended Response in Opposition ... ("Reply") [ECF No. 25] on June 14, 2013. The Court has carefully considered the written submissions, supplemental authority and applicable law.

## I. BACKGROUND

This case concerns a patient, a health care provider, a collection agency, and a health care plan. United, a Florida corporation, issued a health insurance policy to Marlene Ortiz ("Ortiz"), the plan participant ("Participant"), obligating United to pay third-party medical service providers for medical and health care services furnished to Ortiz. (*See* Compl. ¶¶ 13–16 [ECF No. 1–2] ). GIR, a collection agency, alleges Acupuncture & Health Promotion, Inc. ("AHP"), a medical provider, rendered services to Ortiz from August 15, 2012 to September 19, 2012 with appropriate authorization from United, but AHP never received payment. (*See id.* ¶¶ 18, 20, 23). GIR is a Florida entity engaged in the business of collecting accounts receivables, and "it has received an assignment of all available causes of action ... from the medical provider, [AHP], to proceed against the insurer[, United.]" (*Id.* ¶ 3). GIR's Complaint, originally filed in state court, alleges GIR is entitled to recover payment for medical services provided by AHP to a participant in an employee benefit plan ("the Plan") governed by the Employee Retirement Income Security

Act of 1974 ("ERISA"),[4] 29 U.S.C. section 1001 *et seq.* (*See generally* Compl.).

GIR asserts six state-law causes of action against United: common law breach of contract (Count I), breach of an oral contract (Count II), breach of implied contract (Count III), *quantum meruit* (Count IV), open account (Count V), and account stated (Count VI). (*See id.* 4–10). The Complaint specifically disavows any relief under section 502(a) of ERISA, 29 U.S.C. section 1132(a)(1)(B) ("Section 502(a)"), or any claims that are not state law claims. (*See id.* ¶¶ 5–6). GIR seeks damages not exceeding $15,000.00, exclusive of costs and fees. (*See id.* ¶ 8).

On April 2, 2013, United timely removed this action ("Notice of Removal") [ECF No. 1]. United insists removal is proper because GIR's state law claims are preempted by Section 502(a). (*See id.* ¶ 6). GIR seeks remand, relying principally on the Remand Orders which granted remand in cases nearly identical to this action. (*See generally* Notices; Remand Orders).

## II. LEGAL STANDARD

 Under 28 U.S.C. section 1447(c), a case removed from state court must be remanded if it appears that it was removed improvidently. "A suit may be removed to federal court under 28 U.S.C. [section] 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1371 (9th Cir.1987) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). The burden of establishing federal jurisdiction falls on the party attempting to invoke the jurisdiction of the federal

Judge Moore Remand Order, and consequently, the Court considers all the Remand Orders in its analysis here.

4. The parties agree the Plan is governed by ERISA as their arguments solely address complete preemption under ERISA. (*See generally* Compl.; Resp.; Reply).

court. *See McNutt v. Gen. Motors Acceptance Corp. of Indiana.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Moreover, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) (citations omitted). Where the plaintiff and defendant disagree on the issue of jurisdiction, uncertainties must be resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) (citations omitted).

█ "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citation omitted). Nevertheless, there exists an "independent corollary" to the well-pleaded complaint rule known as "complete preemption," which creates federal-question jurisdiction when the "pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* at 393, 107 S.Ct. 2425 (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)); *see also Butero v. Royal Maccabees Life Ins., Co.,* 174 F.3d 1207, 1211–12 (11th Cir.1999). To determine jurisdiction, the Court must look at the plaintiff's complaint at the time of removal. *See Ehlen Floor*

*Covering, Inc. v. Lamb,* 660 F.3d 1283, 1287 (11th Cir.2011).

## III. ANALYSIS

█ State law claims can be subject to the doctrine of complete preemption under ERISA. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). "[A]ny state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Id.* (citations omitted). In order to determine whether a state law claim is completely preempted by ERISA and removable to federal court, the following elements must be satisfied: (1) the claimant must have been able to, at some point in time, bring his or her claim under Section 502(a) of ERISA; and (2) there must be no other independent legal duty implicated by the defendant's actions. *See Borrero v. United Healthcare of NY, Inc.,* 610 F.3d 1296, 1301 (11th Cir.2010) (citing *Davila,* 542 U.S. at 210, 124 S.Ct. 2488); *see also Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1345 (11th Cir.2009).

█ United contends the Court should not follow the Remand Orders,[5] as the claims in this case are completely preempted by ERISA. (*See* Resp. 1–2). GIR maintains the Remand Orders are dispositive and logically sound, and GIR relies on them to contend its claims are not completely preempted by ERISA. (*See* Reply 2–8).

5. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."
*Camreta v. Greene,* —— U.S. ——, 131 S.Ct. 2020, 2033 n. 7, 179 L.Ed.2d 1118 (2011) (citation omitted).

## A. Prong One: GIR Could Have Brought Its Claims Under Section 502(a)

United argues GIR's claims could have been brought under Section 502(a), as the claims are within the scope of ERISA and GIR has standing. (*See* Resp. 3–11). GIR disagrees, arguing United has failed to establish both scope and standing. (*See generally* Reply). GIR contends it "does not seek any relief under ERISA nor does it seek to invade the province of the ERISA plan or what would fall under the auspices of ERISA." (Reply 4). GIR maintains the Court must take the allegations in the Complaint as true, and those allegations do not raise ERISA claims. (*See id.*). Further, GIR claims it does not have standing because the existence of an assignment of benefits does not implicate ERISA. (*See* Reply 5–8).

The first prong of the *Davila* test—whether the plaintiff could have brought its claims under Section 502(a)—is further broken down into two requirements: the plaintiff's claim must fall within the scope of ERISA, and the plaintiff must have standing to sue under ERISA. *See Conn. State Dental*, 591 F.3d at 1350. Both must be satisfied for the claims to be preempted, see *id.*, and the Court considers each requirement in turn.

### 1. GIR's Claims Fall Within the Scope of ERISA

■ The Eleventh Circuit has recognized the distinction between "rate of payment" and "right to payment" claims in determining whether a medical care provider's claims fall within the scope of ERISA. *Conn. State Dental*, 591 F.3d at 1350–51; *see also Borrero*, 610 F.3d at 1302. A rate of payment claim is alleged when a provider is disputing the amount of payment, while a right to payment claim is alleged when the provider is claiming non-payment because the insurer denied payment altogether for "medically necessary" services—a coverage determination defined by the ERISA plan. *Conn. State Dental*, 591 F.3d at 1350–51. The distinction between rate of payment and right to payment, therefore, is whether the claims are payable at all. While a rate of payment challenge does not necessarily implicate an ERISA plan, a challenge to the right to payment under an ERISA plan does. *See Borrero*, 610 F.3d at 1302.

■ Additionally, an "attempt to characterize [ ] claims as eluding the scope of ERISA itself presents a legal rather than a factual conclusion. It is [the Court's] function, however, to draw legal conclusions from the facts pled." *Borrero*, 610 F.3d at 1303 (citations omitted). While "the plaintiff is the master of the complaint," *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425, when the plaintiff chooses to plead a cause of action completely preempted by federal law, he is not always master of the forum, *see Borrero*, 610 F.3d at 1303 (finding even though the plaintiffs explicitly maintained their claims did not seek benefits or remedies under ERISA, they "cast their pleadings in a way that implicates federal law as well."). "[M]erely referring to labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing so would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA." *Conn. State Dental*, 591 F.3d at 1350 (citations and internal quotation marks omitted).

■ In determining whether GIR's claims involve rate of payment or right to payment disputes, the Court considers the substance of GIR's Complaint. *See id.* GIR maintains: "[AHP] rendered health care services that were reasonable and medically necessary ... [, but United] has not made payment, [and has not] explained

or justified the reason for its non-payment" (Compl. ¶¶ 21, 23); AHP "billed [United] for the services rendered ... [and United] failed to pay" (*id.* ¶¶ 35–36); United "has not yet paid for the subject medical services" (*id.* ¶ 46); United "has not paid for the subject services" (*id.* ¶ 55); United's "obligation to pay for the services rendered by [AHP] remains unpaid and outstanding" (*id.* ¶ 62); and United "failed to pay or dispute the charges ... [and] these charges remain due and owing from [United]" (*id.* ¶¶ 69, 71). GIR's claims are all right to payment claims. There is not a single allegation regarding a rate of payment dispute. As evidenced by these allegations, GIR raises only claims of withholding payment, not improper amounts of payment, and thus its claims involve right to payment.

Instead of directly asserting why its claims do not raise rate of payment disputes, GIR maintains United fails to provide sufficient reasons why the Court should not follow Judge King's finding of rate of payment in a nearly identical case. (*See* Reply 3). In that case, a collection agency sued a health care plan on behalf of the medical provider and the plan participant, alleging six state law claims, just as GIR does here. (*See* Judge King Remand Order 2). The Judge King Remand Order states:

> Plaintiff explicitly alleges that this lawsuit is about Defendant's failure to pay for medical services that it had agreed to pay. Under the Eleventh Circuit's application of *Davila* in *Connecticut State Dental,* ... Plaintiff's claims are about the "rate of payment" and not the "right of payment." Only "right of payment" disputes are subject to complete preemption. Taking the allegations in the Complaint as true, Plaintiff has alleged a "rate of payment" claim and, therefore, the state law claims are not completely preempted by ERISA.

(Judge King Remand Order 4 (citations omitted)). Similarly, the First Judge Moore Remand Order and the Second Judge Moore Remand Order (collectively, the "Judge Moore Remand Orders") both state: "Plaintiff's claims, like the claims made by plaintiffs in several related cases in this district, involve a rate of payment dispute that is not subject to complete preemption under ERISA." (First Judge Moore Remand Order 4 (citations and internal quotation marks omitted); Second Judge Moore Remand Order 3 (citations and internal quotation marks omitted)).

While the *Judge King* and *Judge Moore* Remand Orders involve nearly identical claims and parties, the orders do not explain why the allegations in the corresponding complaints qualify as rate of payment claims. The Court follows the binding Eleventh Circuit precedent in *Connecticut State Dental,* explaining right to payment claims based on the withholding of payment are within the scope of ERISA. *See* 591 F.3d at 1350–51. As United has established GIR's claims fundamentally and solely involve right to payment disputes, the Court can only conclude GIR's claims fall within the scope of ERISA.

### 2. *GIR has Standing Under ERISA*

The second requirement United must show to establish complete preemption is that GIR has standing to sue under ERISA. *See Conn. State Dental,* 591 F.3d at 1350. United asserts Judge Graham decided the issue of standing, finding GIR would have standing to sue under Section 502(a). (*See* Resp. 7). GIR maintains the Judge Graham Remand Order did not definitively rule on the issue of standing, and GIR does not have standing. (*See* Reply 5).

 Health care provider claims are not usually subject to complete pre-emption because health care providers are not generally considered beneficiaries or plan participants as required by ERISA. *See Conn. State Dental*, 591 F.3d at 1346. Nevertheless, a health care provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a participant or beneficiary [6] of its right to payment of medical benefits. *See id.* at 1347. An assignment of rights from a participant to a health care provider places the provider in the participant's shoes to enforce rights—such as the right to sue for payment—under ERISA. *See Tango Trans. v. Healthcare Fin. Servs., LLC*, 322 F.3d 888, 893–94 (5th Cir.2003). A medical provider's claims for benefits pursuant to an assignment are thus within the scope of Section 502(a). *See id.*

Additionally, if medical providers cannot sue under an ERISA plan for payment, they will be forced to bill the participant directly for the participant's medical bills, and the participant "will be required to bring suit against the benefit plan when claims go unpaid." *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir.1997) (citation omitted). If medical providers are able to sue for payment of benefits, "[the] assignment will transfer the burden of bringing suit from plan participants ... to providers, who are better situated and financed to pursue an action for benefits owed for their services." *Id.* (alteration, citation and internal quotation marks omitted). As such, Eleventh Circuit precedent provides the interests of ERISA plan participants

are better served when medical providers can sue under ERISA plans. *See id.*

 In its Complaint, GIR acknowledges "[it] is a proper party in interest because it has received an assignment of all available causes of action ... from the medical provider ... to proceed against the insurer and[/]or prosecute the referenced causes of action against any party/entity responsible to make payments to the health care providers for the value of the services rendered to the patient/insured." (Compl. ¶ 3). GIR further states "[n]either the Plaintiff ... nor its predecessor in interest[, the] medical provider[,] is a plan participant or beneficiary, rather, the Plaintiff stands in the within action as both intended third party beneficiary of the pertinent health insurance contract and direct beneficiary and/or successor in interest of agreements, both explicit and implied, between the medical provider and Defendant." (*Id.* ¶ 4). GIR also states "[AHP] assigned its rights ... to collect benefits under this claim, to Plaintiff, GIR.... Therefore, by and through the subject assignment ... Plaintiff now stands in the shoes of and is otherwise legally entitled to pursue the outstanding amounts for services rendered by the medical provider." (*Id.* ¶¶ 25–26).

As a collection agency, GIR was assigned rights from AHP (*see* Compl. ¶ 3), which itself received rights from Ortiz (*see* Grabowski [7] Decl. ¶¶ 7–8 [ECF No. 1–3]; *see also* Attach. to Grabowski Decl. Ex. B 9 [8] [ECF No. 1–11] (depicting Ortiz's assignment of benefits to AHP based on

---

6. A plan participant or beneficiary is also referred to as an insured. (*See, e.g.,* Compl. ¶ 41).

7. Stephanie Grabowski is a Senior Legal Services Specialist for United. (*See* Grabowski Decl. 1). In this role, she is familiar with United's business records, including Summary Plan Descriptions, and electronic rec-

ords surrounding claims submissions, including assignment of benefits documentation. (*See id.*).

8. Because the page numbers in Exhibit B repeat themselves and are confusing, the Court uses the CM/ECF page numbers.

AHP's electronic submission of claims to United)). This assignment is precisely the same as the assignment in *Tango Transport*, where a participant in an ERISA plan executed an assignment of benefits to a provider for medical treatment he received, and the provider, in turn, assigned the participant's outstanding accounts to a health care collection agency which sought reimbursement from the insurer. *See* 322 F.3d at 889. The Fifth Circuit in *Tango Transport* held the collection agency had derivative standing, as the medical provider assigned its right to payment to the collection agency. *See id.* at 893–94. The Fifth Circuit explained,

> [D]enying derivative standing to health care providers would harm participants or beneficiaries because it would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them up-front. Likewise, granting derivative standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front. Conversely, to bar health care providers from assigning their rights under ERISA, and shifting the risk of nonpayment to a third-party, would chill health care providers' willingness to accept a patient. Third parties like [collection agencies] will only be willing to purchase an assignment from a health care provider if they can be assured that they will be afforded standing to sue for reimbursement.

*Id.* at 894 (citation and internal quotation marks omitted). Consequently, GIR has standing under ERISA based on the assignment of rights to collect debts on Ortiz's account from AHP.

GIR disingenuously attempts to undermine its own standing to sue by asserting it "does not and has not asserted such derivative rights by and through an assignment." (Reply 5). This repudiation of assignment of rights is plainly controverted by GIR's own Complaint. (*See* Compl. ¶¶ 3, 4, 25–26). Moreover, if GIR did not have standing to sue, it could not recover the payment it seeks in the present lawsuit.

GIR next insists the Judge Graham Remand Order found GIR did not have derivative standing through an assignment of rights. (*See* Reply 5). A reading of the Judge Graham Remand Order, however, reveals GIR was found to have obtained derivate standing. The Remand Order states, in pertinent part, "[H]ealthcare providers may have standing under ERISA when they derivatively assert rights of their patients as beneficiaries of an ERISA plan. The Eleventh Circuit has determined that the assignment of the right to payment is enough to create standing. Based on the foregoing, the Court finds that [GIR] could have brought claims under ERISA, satisfying the first condition [of the *Davila* test]." (Judge Graham Remand Order 4 (citations omitted)). In accordance with the Judge Graham Remand Order regarding the first part of the *Davila* test, the Court finds GIR could have brought its claims under ERISA, as the claims pled are within the scope of Section 502(a) and GIR has standing.

**B. Prong Two: There is No Independent Legal Duty**

United contends GIR's claims are not based on separate legal duties because the claims are based on the ERISA Plan. (*See* Resp. 7). GIR disagrees, asserting its claims are based on separate legal duties owed directly to the medical provider. (*See* Reply 5).

 Status as assignee to the benefits conferred to a participant under an

ERISA plan does not resolve the complete preemption issue, as an assignment of benefits does not guarantee complete preemption. *Paragon Office Servs., LLC v. Aetna, Inc.*, No. 3:11–CV–1898–L, 2012 WL 2423103, at *6 (N.D.Tex. June 27, 2012). To satisfy the second prong of the *Davila* test, and thus establish complete preemption, United must show GIR alleges a claim that is not founded on an independent legal duty. *See Borrero*, 610 F.3d at 1301 (citing *Davila*, 542 U.S. at 210, 124 S.Ct. 2488).

 An assignee which has state law claims independent of claims arising under ERISA can assert a claim for benefits under state law, ERISA, or both. *See Conn. State Dental*, 591 F.3d at 1347. If a party is suing "under obligations created by the plan itself, [instead of] under obligations independent of the plan and the plan member," the alleged obligations implicate legal duties which are not entirely independent of ERISA, and thus are subject to complete preemption. *Spring E.R., LLC v. Aetna Life Ins. Co.*, No. H–09–2001, 2010 WL 598748, at *5 (S.D.Tex. Feb. 17, 2010). "[A]ny determination of benefits under the terms of a plan, i.e., what is medically necessary or a Covered Service—does fall within ERISA." *Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 531 (5th Cir.2009) (internal quotation marks omitted). If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan. *See id.* at 530–31. Thus, any determination of benefits under the terms of an ERISA plan, even regarding a seeming independent breach of oral or implied contract based on verification of those benefits, falls under ERISA and is a legal duty dependent on, not independent of, the ERISA plan. *See Montefiore Med. Ctr. v.*

*Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir.2011) (finding no independent legal duty where the medical provider called to verify coverage); *Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*, No. 3:11–CV–2205–D, 2012 WL 1019953, at *7 (N.D.Tex. Mar. 27, 2012) (finding no independent legal duty where the implied contract was based on benefits under the terms of a plan); *Paragon Office Servs. v. Aetna*, 2012 WL 2423103, at *9 (same); *Spring E.R.*, 2010 WL 598748, at *5–6 (same).

For example, in *Montefiore Medical Center*, the plaintiff, a health care provider, called the insurer-defendant via telephone prior to providing services to ensure the patient was eligible and the anticipated services were covered. *See* 642 F.3d at 332. The health care provider argued the verbal communications gave rise to an independent legal duty between the provider and the insurer. *See id.* The Second Circuit, not persuaded by this argument, held the pre-approval phone conversations verifying coverage under the plan required an interpretation of the plan's coverage and benefits and were not independent legal duties derived from an oral agreement. *See id.*

 In the present case, GIR alleges six claims based on the same set of operative facts, including: breach of contract, breach of oral agreement, breach of implied contract, *quantum meruit*, open account, and account stated. (*See generally* Compl.). All six claims are premised on an interpretation of the Plan because each requires the Court to consult the Plan to determine if AHP's services fall within the Plan's coverage. *See generally Lone Star*, 579 F.3d 525. A legal duty "is not independent of ERISA if it 'derives entirely from the particular rights and obligations established by [ ERISA] benefit plans.'" *Ambulatory Infusion Therapy Specialists*,

*Inc. v. Aetna Life Ins. Co.,* No. H–05–4389, 2006 WL 1663752, at \*7 (S.D.Tex. June 13, 2006) (quoting *Davila,* 542 U.S. at 210, 124 S.Ct. 2488). The legal duties at issue here are not independent as they require an interpretation of Ortiz's ERISA Plan and United's duties thereunder.

Additionally, GIR states prior to rendering services to Ortiz AHP verbally contacted United to confirm coverage of the patient and for the subject services "under the subject health care [P]lan." (Compl. ¶ 31). Although GIR asserts the conversations created an independent oral agreement, these verbal coverage confirmations are based on the Plan's coverage and benefits, and therefore, cannot be independent legal duties. *See Montefiore Med. Ctr.,* 642 F.3d at 332.

GIR insists its claims are based on separate legal duties independent of ERISA; however, it never explains what those independent legal duties include. (*See* Reply 6). Further, while GIR addresses the Judge Graham Remand Order in its Reply, GIR does not mention Judge Graham's finding of an independent legal duty owed to AHP based on the alleged breach of oral agreement. (*See generally* Reply). Although the Court finds all six claims preempted, because of the findings in some of the Remand Orders, the Court specifically addresses whether oral agreement claims and implied contract claims create independent legal duties in the present case.

The Judge Graham Remand Order found the verbal conversations between the health care plan and the medical provider—allegedly confirming coverage and authorizing the medical provider to proceed with service—form an independent legal duty, thus precluding complete preemption. (*See* Judge Graham Remand Order 4–5 (citing *Mitchell–Hollingsworth Nursing & Rehab., Ctr., LLC v. Blue*

*Cross & Blue Shield of Mich.,* 919 F.Supp.2d 1209 (N.D.Ala.2013))). The Judge Graham Remand Order states:

> For removal to stand, Defendant must also show that Plaintiff's claims do not involve any other independent legal duty that is implicated by [its] actions. Of course, Plaintiff contends that its claims clearly implicate separate legal duties from those found under ERISA which arose because of the direct interaction between the Defendant and the underlying medical provider. Based on the facts alleged in the · Complaint, the [c]ourt agrees. The Complaint alleges that, prior to [the medical provider's] provision of services, Defendant orally agreed that the patient was covered, and authorized the medical provider to proceed with service. This oral representation by Defendant forms the basis of Plaintiff's state law claims. The [c]ourt finds that these claims form an independent legal duty based on Defendant's actions.

(Judge Graham Remand Order 4–5 (citing *Mitchell–Hollingsworth,* 919 F.Supp.2d 1209)).

In *Mitchell–Hollingsworth,* the district court found the oral representations were an independent agreement because they were not based upon the original agreement between the patient and the medical provider. *See Mitchell–Hollingsworth,* 919 F.Supp.2d at 1218–20. The insurance company actually paid for the provided services, but then sought to recuperate funds, as some of the payments were made for non-covered services. *See id.* at 1212–14. The allegations in the complaint, stating ten causes of action, were based on the length of coverage at a particular nursing facility and the resulting amount due. *See id.* at 1212–15. The court explained "[d]eciding Counts II through X of [the plaintiff's] complaint will not require the court

to construe any ERISA plan terms, or to determine whether [the patient] was entitled to coverage under the plan." *Id.* at 1219.

As mentioned, the present case, with a breach of oral agreement claim, requires the Court to interpret the Plan to determine whether the services are covered, and in turn, if GIR will be paid for the services AHP allegedly rendered to Ortiz. In *Mitchell–Hollingsworth* the court did not need to construe any ERISA plan terms. This case inherently requires the Court to look at the Plan to see if the services AHP provided are covered, because GIR's breach of oral agreement claim is premised on the allegation that United verbally promised AHP its services were covered "under the subject health care plan." (Compl. ¶ 31). As such, the Court finds there is no independent legal duty regarding the breach of oral agreement claim.

The Judge Moore Remand Orders granted remand in two nearly identical cases, based, in part, on independent legal duties found in breach of implied contract claims. (*See generally* Judge Moore Remand Orders). The First Judge Moore Remand Order states:

> [F]or complete preemption to exist, Defendant must show that Plaintiff's claims do not involve any other independent legal duty that is implicated by its actions. Plaintiff's [c]omplaint clearly implicates separate legal duties from those found under ERISA ... Plaintiff's state law claims exist independently from ERISA, as Plaintiff alleges Defendant breached common law duties owed to the underlying medical provider.

(First Judge Moore Remand Order 3 (citations omitted); *see also* Second Judge Moore Remand Order 3 ("Here, as in [the First Judge Moore Remand Order], Plaintiff's complaint clearly implicates separate

legal duties from those found under ERISA. Plaintiff's state law claims exist independently from ERISA, as Plaintiff alleges Defendant breached common law duties owed to the underlying medical provider.")). The implied contract claim, like the oral agreement claim, similarly necessitates an evaluation of what is covered under the Plan.

For example, in *Spring E.R.*, a case including a breach of implied contract claim related to an ERISA plan, the district court found:

> [I]n determining the facts, circumstances, and actions of the parties that may give rise to an implied contract, this Court would necessarily refer to the ERISA plans at issue, because the presented health cards explicitly limit the offer to healthcare providers to the plan terms. As such, the implied contract claim asserted by [the provider] cannot constitute an independent legal obligation that takes this case outside of the scope of ERISA.

*Spring E.R.*, 2010 WL 598748, at *5. Notwithstanding that the implied contract claim in *Spring E.R.* derived from the health care card, if the court must ultimately refer to the ERISA plan to determine the contours of any alleged agreement, such agreement does not create an independent legal duty. *See id.*

In the present case, GIR alleges a breach of implied contract claim. In particular, GIR alleges AHP provided medical services to Ortiz because United "by agreement with the patient/insured" receives a premium in exchange for the promise of payment to medical providers, and United did not satisfy its "obligations to the patient." (Compl. ¶¶ 41, 43). Because GIR itself alludes to the Plan in its breach of implied contract count, the Court will necessarily refer to the Plan in determining whether the facts, circumstances,

and actions of the parties give rise to the alleged implied contract. *See Spring E.R.,* 2010 WL 598748, at *5. Consequently, there is no independent legal duty based on an implied contract.[9]

As stated, GIR asserts three other alternative causes of action—*quantum meruit,* open account, and account stated. (*See* Compl. 8–10). For each of these causes of action, GIR acknowledges "services were provided by the medical provider to the patient after the medical provider confirmed with [United] that the patient and the subject services were covered under the subject health plan." (Compl. ¶¶ 51, 60, 65). Although these claims are only pled in the alternative, these claims are also completely preempted by ERISA because they require the Court to interpret the ERISA Plan. *See Lone Star,* 579 F.3d at 530–31; *see also Borrero,* 610 F.3d at 1304.

Because there is no independent legal duty with regard to GIR's claims, and GIR could have brought its causes of action under ERISA based on the Complaint, United properly removed the case to federal court. Consequently, the Court will not remand the action.

## C. United's Motion to Dismiss

United filed a Motion to Dismiss ... ("Motion to Dismiss") [ECF No. 7] on April 8, 2013.[10] The Court's May 23 Order denied the Motion to Dismiss without prejudice, pending the result of other remand motions in cases involving the same or similar parties as are present in this action. (*See* May 23 Order 1). In its Motion to Dismiss, United maintains GIR's six causes of action are all completely preempted by ERISA and thus must be dismissed. (*See* Mot. to Dismiss 2, 8–9). The Court agrees the six claims are com-

9. As a final argument, GIR asserts district court decisions from the Southern District of Texas, such as *Paragon Office Services v. UnitedHealthGroup, Paragon Office Services v. Aetna,* and *Spring E.R.,* are not factually or legally binding on the Court. (*See* Reply 7). Instead, GIR contends the Eleventh Circuit's decisions in *Connecticut State Dental* and *Borrero* are the proper, controlling authority. (*See id.* 7–8). GIR is correct the Eleventh Circuit decisions are binding; however, the decisions in *Connecticut State Dental* and *Borrero* do not address breach of implied contract claims or breach of oral agreement claims related to an ERISA plan. *See Borrero,* 610 F.3d at 1304 (holding no independent legal duty even where other allegations in the complaint were based on independent provider-insurer contracts); *Conn. State Dental,* 591 F.3d at 1353 (holding no independent legal duty where at least one claim was completely preempted and supplemental jurisdiction allowed the district court to exercise jurisdiction over any non-preempted state law claims). As other district court orders serve as persuasive authority, the Court looks to them for guidance. *See, e.g., Cortright v. Thompson,* 812 F.Supp. 772, 776 (N.D.Ill. 1992).

10. On April 8, 2013, after filing the Motion to Dismiss, United also filed a Motion to Strike Demand for Jury Trial, Claim for Non-ERISA Damages and Claim for Attorney Fees ("Motion to Strike") [ECF No. 8], presumably pursuant to Federal Rule of Civil Procedure 12(f). However, according to Federal Rule of Civil Procedure 12(g)(2), "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See also Chen v. Cayman Arts, Inc.,* No. 10–80236–CIV, 2011 WL 1085646, at *2 (S.D.Fla. Mar. 21, 2011) ("The Third–Party Defendants content that Rule 12(g) only limits their 12(b) arguments, and not their Rule 10, 12(e), or 12(f) arguments. Under the plain language of Rule 12(g), the limitation on further motions applies to 'a motion under this rule.' Fed. R.Civ.P. 12(g)(2). The rule does not distinguish between sub-parts of Rule 12....."). United may assert its objections to the requests for jury trial, non-ERISA damages and claim for fees in its Answer.

pletely preempted, but United has not articulated why these claims fail to state claims upon which relief can be granted, nor why the claims' complete preemption warrants dismissal of the suit. Indeed the Court's preemption determination signifies the claims must remain. Accordingly, given the absence of any well-supported basis for dismissal, the Court declines to dismiss the case.

## IV. CONCLUSION

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Remand is improper.
2. The Motion to Dismiss [**ECF No. 7**] and Motion to Strike [**ECF No. 8**] are **DENIED.** Defendant shall file an Answer to the Complaint on or before **August 15, 2013.**

The parties shall prepare and file a joint scheduling report pursuant to the Court's Order dated April 3, 2013 [**ECF No. 4**] on or before **August 15, 2013.**